IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| EUGENE PRIESTER,<br><br>                Petitioner,<br><br>vs.<br><br>MILDRED L. RIVERA,<br><br>                Respondent. | Civil Action No. 3:07-2787-RBH-JRM<br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

Petitioner, Eugene Priester ("Priester"), is an inmate at FCI-Estill. On August 14, 2007, he filed petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the calculation of his sentence by the Federal Bureau of Prisons ("BOP"). Pretrial matters in this case were automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636 and Local Rule 73.02 (B)(2)(c) and (e), DSC. Respondent, Warden of FCI-Estill, filed a motion for summary judgment on December 11, 2007, supported by various documents including those relating to Priester's exhaustion of his administrative remedies as required by BOP procedure and § 2241. Because petitioner is pro se, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued on December 14, 2007, explaining his responsibility to respond to the motion for summary judgment. Petitioner filed a response on January 28, 2008. Respondent filed a reply on February 5, 2008.

**Standard of Summary Judgment**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). With respect to this burden, "it is the responsibility of the [nonmovant], not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the [movant's] summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F. Supp. 2d 596, 604 (D.Md.1998).

**Discussion**

Priester challenges BOP's failure to give him credit against his federal sentence at various times and to approve a *nunc pro tunc* designation of a state facility to allow him to serve his federal sentence.  A discussion of the issues raised by Priester necessarily begins with a summary of his journey through the criminal justice system.  There is no dispute with respect to the following:

1. Priester was arrested by state authorities in Savannah, Georgia, on January 17, 2004, on drug and firearms charges.  He was released on bond.

2. On March 5, 2004, Priester was again arrested in Savannah, Georgia on drug and firearms charges and released on bond.

3. Priester was arrested a third time for drug and firearms charges in Savannah, Georgia on May 20, 2004. Bond was denied.

4. On July 13, 2004, a Grand Jury for the United States District Court for the Southern District of Georgia ("the Court") returned a three-count indictment against Priester adopting the state charges stemming from his arrest on May 20, 2004. (Res. Mem., Ex. D). Priester was charged with possession with intent to distribute marijuana (Count 1), being a felon in possession of a firearm (Count 2), and possessing a firearm in furtherance of a drug trafficking crime (Count 3). (Res. Mem., Ex. C).

5. On July 14, 2004, an arrest warrant was issued for Priester by the Court. (Res. Mem., Ex. D).

6. On July 16, 2004, the Court issued a Writ of Habeas Corpus ad Prosequendum to bring Priester from state custody. (Id.).

7. On November 23, 2004, Priester pled guilty to Count 2 of the indictment. (Id.).

8. Priester was sentenced to 120 months imprisonment on February 23, 2005 and Counts 1 and 3 of the indictment were dismissed. (Res. Mem., Ex. D and F).

9. Priester was returned to state authorities for prosecution on the pending state charges and a detainer was placed by the United States Marshal's Service. (Res. Mem., Ex. g).

10. On or about February 25, 2005, Priester pled guilty to the drug charge for which he was arrested by state authorities on March 5, 2004, and was sentenced to two years imprisonment.

11. Georgia Department of Corrections ("GDC") records indicate that Priester began serving his state sentence on May 13, 2004, essentially giving him credit against his state sentence from that date. (Res. Mem., Ex. J).

12. Priester "maxed out" his state sentence on May 12, 2006. GDC officials failed to recognize the detainer, and Priester was released. (Res. Mem., Ex. I).

13. Federal authorities arrested Priester on May 24, 2006. (Res. Mem., Ex. L).

14. BOP computed Priester's sentence with a beginning date of May 24, 2006, the date he was arrested by federal authorities after having been mistakenly released by GDC. He has a projected release date of May 23, 2016. (Res. Mem., Ex. B).

**A.     Sentence Computation**

Priester asserts that he is entitled to credit against his federal sentence for all time after the writ of habeas corpus ad prosequendum was served (July 16, 2004) until he was returned to the State of Georgia (February 25, 2005) which Priester refers to as "presentence credit" and "post-sentence credit" as well as the twelve days he was at liberty after having been erroneously released by GDC.

The Attorney General of the United States, through BOP, maintains custody of federal prisoners. The Attorney General, therefore, is responsible for determining the beginning date of custody and calculation of a release date. This includes the application of federal statutes relating

to credit for time spent in custody prior to the commencement of the federal sentence. United States v. Wilson, 503 U.S. 329 (1992).

Before 1987, 18 U.S.C. § 3568 effected the Attorney General's calculation. The statute read in part:

> The Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offenses or acts for which sentence was imposed.

The Sentencing Reform Act of 1984, which became effective in 1987, recodified and rewrote § 3568 into 18 U.S.C. § 3585(b). The current provision states in part:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences–
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

The statute as rewritten precludes a defendant from receiving "a double credit for his detention time." Wilson, 530 U.S. at 337. Here, the record shows that Priester was given credit against his state sentences for all time he is now seeking credit with respect to his federal sentence. Priester is not entitled to "double count" these periods of incarceration against his federal sentence. Jordan v. Attorney General, 2004 WL 3541821, *4 (D.S.C. 2004).

Priester specifically argues that he is entitled to credit when he was brought into the federal system by the writ of habeas corpus ad prosequendum. Generally, a federal sentence does not commence until the Attorney General receives the defendant into his "custody" for service of the

sentence. 18 U.S.C. § 3585(a)[1] and United States v. Evans, 159 F.3d 908, 911 (4th Cir. 1998). When a defendant is sentenced by two different sovereigns, the sovereign that arrested him first acquires and maintains primary jurisdiction of him until the sentence imposed by that sovereign has been satisfied. Ponzi v. Fessenden, 258 U.S. 254 (1922); Evans. 159 F.3d at 912; and Wallace v. Hamidullah, 2006 WL 752851, *5 (D.S.C. 2006) (unpublished). Courts have long held that a federal sentence does not begin to run when a prisoner is produced by a state for federal prosecution pursuant to a writ of habeas corpus ad prosequendum. Stewart v. Bailey, 7 F.3d 384, 389 (4th Cir,. 1993) (a prisoner is not "in custody" when he appears in another jurisdiction's court pursuant to a writ of habeas corpus ad prosequendum; he is merely "on loan" to that jurisdiction). Thomas v. Walen, 962 F.2d 358, 361, n. 3 (4th Cir. 1992). Here, Georgia retained primary jurisdiction over Priester when he appeared in federal court pursuant to the writ of habeas corpus ad prosequendum. Federal custody did not begin while Priester was "on loan."

Priester also alleges that he is entitled to credit for the time he spent "on the street" after he was mistakenly released by the State of Georgia. He cites Luther v. Vanyur, 14 F.Supp.2d 773 (E.D.N.C. 1997) as authority. However, the facts in that case are significantly different that the situation presented by Priester. In Luther, the petitioner, who was serving a state sentence, was mistakenly transferred to the BOP to begin serving his federal sentence. Over three years later, the mistake was discovered and the petitioner was returned to state custody. When the state obligation was completed, the petitioner was returned to the BOP to finish his federal sentence. In computing petitioner's sentence, BOP determined that he commenced his sentence on his second arrival at

---

[1] The defendant may receive credit for time spent in custody under § 3585(b), quoted above, if applicable.

BOP. The Court granted petitioner's habeas petition based on the clear language of 18 U.S.C. § 3585(a), i.e., the petitioner commenced his sentence when he arrived at BOP on the first occasion. Here, BOP has properly found that Priester commenced his sentence when he was taken into custody after he was mistakenly released by Georgia authorities.

Respondent discusses the recent holding of Vega v. United States, 493 F.3d 310 (3d Cir. 2007), a case factually similar to the at bar.[2]  The Third Circuit, noting "(t)he diverging paths taken by courts of appeal" formulated "a test which district judges may apply in resolving claims for credit for time at liberty when a prisoner has been erroneously released by one sovereign without having completed an obligation to a separate sovereign." Id. at 316.  In formulating this test the Court rejected petitioner's argument that his entitlement to credit for time at liberty was compelled by the due process clause.  Instead, the Court found that the basis for the claim was at common law.  The Court held:

> (I)n order for a prisoner to receive credit for time he was erroneously at liberty, the prisoner's habeas petition must contain facts that demonstrate that he has been released despite having unserved time remaining on his sentence.  Once he has done this, the burden shifts to the government to prove either (1) that there was no negligence on the part of the imprisoning sovereign, or (2) that the prisoner obtained or retained his liberty through his own efforts.

Id. at 319.

In discussing its new test, the Court addressed the issue which sovereign must be shown to be negligent. The Court rejected the Ninth Circuit's holding in Clark v. Floyd, 80 F.3d 371, 374 (9th Cir. 1996) that negligence on the part of any sovereign is sufficient to allow credit for time spent at

---

[2] In Vega, the petitioner spent two years at liberty after he was mistakenly released by state authorities before beginning a federal sentence.

liberty and adopted the position of the Fifth Circuit in <u>Leggett v. Fleming</u>, 380 F.3d 232, 235-36 (5th Cir. 2004) that only negligence on the part of the imprisoning sovereign is sufficient.

Priester's claim fails under the <u>Vega</u> test. The record shows that the United States Marshal's service filed a detainer that was received and posted by Georgia authorities. It appears that the state authorities were negligent in failing to notify the Marshal's service of Priester's impending release as requested by the detainer.

### B.     *Nunc Pro Tunc* **Designation**

Priester also argues that he is entitled to a *nunc pro tunc* designation that he be allowed to serve his federal sentence at a state institution pursuant to statute which would entitle him credit for time spent in state custody.

In <u>Barden v. Keohane</u>, 921 F.3d 476 (3rd Cir. 1991), petitioner brought a § 2241 habeas petition to gain credit for time served in a state prison by having that state facility designated a federal facility *nunc pro tunc*. In pursuing his administrative remedies, BOP declined to recognize that it had the statutory authority to make such a designation. The <u>Barden</u> court held that petitioner was "entitled to have his request considered by the agency with the statutory power to grant it and that 28 U.S.C.A. § 2241 is available to compel that consideration." (<u>Id</u>. at 484).

After <u>Barden</u>, the BOP began to analyze requests for retroactive designations pursuant to 18 U.S.C. § 3621(b). Indeed, the denial of Priester's administrative appeal references <u>Barden</u>. (Res. Mem., Ex. K).

The statute states in part:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise

8

and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering--

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

The denial of Priester's administrative appeal indicates that BOP considered all but the first factor listed above, as well as Program Statement 5160.05 (Res. Mem., Ex. L). The record shows that BOP properly considered and denied Priester's request for a *nunc pro tunc* designation.

## **Conclusion**

Based on a review of the record, it is recommended that respondent's motion for summary judgment be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

August 5, 2008
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).